1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF HAWAII

3

   UNITED STATES OF AMERICA,      ) CRIMINAL NO. 17-00582JMS-RLP
4                                  )
              Plaintiff,           ) Honolulu, Hawaii
5                                  ) May 3, 2019
          vs.                      )
6                                  )
   KATHERINE P. KEALOHA (1),       ) FINAL PRETRIAL CONFERENCE
7    aka Katherine E. Kealoha,     )
     aka Kathy Kealoha,            )
8    aka Kat, aka Alison Lee Wong,)
   LOUIS M. KEALOHA (2),           )
9  DEREK WAYNE HAHN (3),           )
   MINH-HUNG NGUYEN (4),           )
10   aka Bobby Nguyen,             )
   GORDON SHIRAISHI (5),           )
11                                 )
              Defendants.          )
12 _____ )

13

14                  TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE J. MICHAEL SEABRIGHT
15            CHIEF UNITED STATES DISTRICT JUDGE

   APPEARANCES:
16

   For the Government        JOSEPH J.M. ORABONA, ESQ.
17 (By telephone):           COLIN M. MCDONALD, ESQ.
                             JANAKI S. GANDHI, ESQ.
18                           Special Attorneys to the
                              Attorney General
19                           United States Attorney's Office
                             880 Front Street, Room 6293
20                           San Diego, California  92101

21

22 For Defendant             CYNTHIA A. KAGIWADA, ESQ.
   Katherine P. Kealoha:     Attorney at Law
23                           P.O. Box 368
                             Kaneohe, Hawaii  96744
24

25

```
 1      APPEARANCES (Cont'd.):

 2      For Defendant          RUSTAM A. BARBEE, ESQ.
        Louis M. Kealoha:      Attorney at Law
 3                             1188 Bishop Street, Suite 2606
                               Honolulu, Hawaii  96813
 4

 5      For Defendant          BIRNEY B. BERVAR, ESQ.
        Derek Wayne Hahn:      Bervar & Jones
 6                             1100 Alakea Street, 20th Floor
                               Honolulu, Hawaii  96813
 7

 8      For Defendant          RANDALL K. HIRONAKA, ESQ.
        Minh-Hung Nguyen:      Miyoshi & Hironaka, LLLC
 9                             345 Queen Street, Suite 600
                               Honolulu, Hawaii  96813
10

11      For Defendant          LARS ROBERT ISAACSON, ESQ.
        Gordon Shiraishi:      Attorney at Law
12                             1003 Bishop Street, Suite 2700
                               Honolulu, Hawaii  96813
13

14

15

16

17

18

19

20      Official Court         Cynthia Fazio, RMR, CRR, CRC
        Reporter:              United States District Court
21                             300 Ala Moana Blvd., C-270
                               Honolulu, Hawaii  96850
22

23

24
        Proceedings recorded by machine shorthand, transcript produced
25      with computer-aided transcription (CAT).
```

1  FRIDAY, MAY 3, 2019                          2:19 P.M.

2          THE COURTROOM MANAGER:  Criminal Number

3  17-00582JMS-RLP, United States of America versus Katherine P.

4  Kealoha, et al.

5          This case has been called for a final pretrial

6  conference.

7          Counsel, please make your appearance for the record.

8          MR. McDONALD:  Good afternoon, Your Honor.  Colin

9  McDonald, Janaki Gandhi and Joseph Orabona on behalf of the

10  United States.  And thank you for allowing us to appear by

11  telephone today.

12          THE COURT:  All right.  Yes, thank you.

13          MS. KAGIWADA:  Good afternoon, Your Honor.  Cynthia

14  Kagiwada on behalf of Katherine Kealoha.  I would request that

15  my client's presence be waived.

16          THE COURT:  Yes.

17          MR. BARBEE:  Good afternoon, Your Honor.  Rustam

18  Barbee appearing on behalf of Louis Kealoha.  I'd ask that his

19  presence be waived also.

20          THE COURT:  Yes.

21          MR. BERVAR:  Good afternoon, Your Honor.  Birney

22  Bervar on behalf of defendant number three, Derek Hahn.  I'd

23  like to waive his presence.

24          THE COURT:  Yes.

25          MR. HIRONAKA:  Your Honor, good afternoon.  Randy

 1   Hironaka on behalf of Bobby Nguyen, whose presence I would ask

 2   the Court to waive.

 3            THE COURT:  Yes.

 4            MR. ISAACSON:  Good afternoon, Your Honor.  Lars

 5   Isaacson for Mr. Shiraishi.  I'd ask his presence be waived.

 6            THE COURT:  Yes.  Thank you.  All right.  Good

 7   afternoon, everyone.  You may be seated.  You can stay seated

 8   if you want, just speak into the microphone.

 9            All right.  So I think that, you know, Ms. Kagiwada

10   suggested we get back together one time.  Let me give you an

11   update as to where we are with the jury pool.  We can start

12   with that.  We sent out 1500 questionnaires.  I don't have the

13   exact number of no responses, but out of that there's always a

14   large number of people who don't respond.  We got 453 timely

15   "yes," that is able to serve.  And that is either people who

16   said "yes" or after I looked through it I determined they

17   should be included in the "yes" pile.  Okay.

18            And I went through all of the no's, agreed they can't

19   serve for a multitude of reasons, the biggest being travel.

20   With summer coming up, a lot of people have travel plans and

21   submitted, you know, their purchased plane tickets and so

22   forth.

23            Then after we sent out the summons to appear on the

24   13th, of the 453, we received 30 -- of those 30 no's.  In other

25   words, oh, I checked the wrong box, or some of them have real

1    medical issues that have arisen and so forth, so -- and I

2    looked through all those excuses and excused them.

3          And then we got ten late yes's.  That is they came in

4    late and they're a "yes."  So you do the math, that's up to

5    433.  We still have five people that haven't responded of those

6    433?  Still five; is that right.

7          THE JURY CLERK:  Yes.

8          THE COURT:  So we just don't know what that means.  I

9    mean maybe they moved, maybe, you know, they're in the

10   hospital, we don't know.  So that's the rough number where we

11   are, okay.  The 420 to 430 number is hopefully what will show

12   up on the 13th.  I don't know how many of those will be no

13   shows.  Presumably less than normal because they've already

14   been -- you know, said they would be available for that date.

15         The only change I'm going to make to the jury

16   questionnaire, I looked at this, and it's very minor, very,

17   very minor, but I wanted to let you know, it's the last

18   question.  I believe it's the last question.  No, next to last.

19   30, the question now reads:  Do you know of any reason

20   whatsoever you cannot sit as a fair and impartial juror in this

21   case?  I'm going to say "other reason" because we've already

22   sort of covered a number of matters and I want them to

23   understand they can talk about something else that they may

24   believe disqualifies them.  So I'm just going to add that word,

25   "other."  I assume there's no objection to that.

1         MR. BARBEE:  No objection.

2         MS. KAGIWADA:  No objection.

3         MR. HIRONAKA:  No, Your Honor.

4         MR. ISAACSON:  No, Your Honor.

5         MR. McDONALD:  No.

6         THE COURT:  All right.

7         MR. McDONALD:  No objection, Your Honor.

8         THE COURT:  All right.  Now, today the witness list is

9    to be submitted.  Is that on its way in or has it been

10   submitted?

11        MR. McDONALD:  Yes, Your Honor, the United States is

12   in the process of alphabetizing and consolidating the list from

13   the defense.  We are awaiting the final list from the defense.

14   I think were set, but we are awaiting.  And we received an

15   e-mail early this morning from -- or late last night from one

16   defense attorney asking us to hold off sending that to the

17   Court.  And so we are awaiting that final list from them.

18        THE COURT:  All right.  I thought they were supposed

19   to give it to you by May 1st.  Wasn't that --

20        MR. McDONALD:  They -- they --

21        THE COURT:  Isn't that what I ordered?

22        MS. KAGIWADA:  And I did provide a compiled list of

23   all defense attorneys' witness lists to the government on

24   May 1st.

25        THE COURT:  So what are we waiting for?  I'm confused.

1          MR. ISAACSON:  I'm sorry, Judge.  That's me.  There

2    was a question I had.  I think it's been resolved now.  I'm

3    sorry.  Sorry I didn't e-mail.  There was a question that we

4    had.  But we're good now.

5          THE COURT:  Okay.  But it doesn't sound like the

6    government's good because they said they're waiting, so...

7          MR. ISAACSON:  I'm sorry.  It was my fault for not

8    clarifying, Judge.  There was an issue that came up last night

9    that I thought needed to be addressed.  It has been addressed.

10   And I apologize to the government for not letting them know

11   early this morning it has been addressed.  So...

12         THE COURT:  Okay.  So I don't know if they still know,

13   though, what that means because I don't know what it means.  Is

14   the list that Ms. Kagiwada provided on May 1st, is that the

15   final list and they're good to use that list?

16         MR. ISAACSON:  Yes.  There have been some redactions

17   from that list, but --

18         THE COURT:  I see.

19         MR. ISAACSON:  So that was -- there were some

20   questions and that's been resolved.

21         THE COURT:  I see.  So there was a list provided and

22   then some people said let's take a few people off the list, and

23   that's what happened in the last few days.  That's fair enough.

24         But the government should have everything now.  They

25   don't need to hear from you further then, is what --

1      MR. ISAACSON:  That's correct.  And I'm apologizing to

2   them for not getting back to them earlier --

3      THE COURT:  All right.  All right.  So, Mr. McDonald,

4   if you can just make sure you get that over to me then and

5   we'll incorporate that into the questionnaire.  And the plan is

6   to be done with that questionnaire, you know, by Tuesday is my

7   goal to have everything done and then -- and then we can get

8   copies made and so forth.  So I think we're fine -- we're fine

9   as far as the timing on that goes.

10      MR. McDONALD:  Could I just ask one question about the

11   witness list?  Would you prefer that we file that?  Because the

12   list that we've compiled includes the hometown and occupation

13   of these witnesses.  And so the question is, do we provide that

14   directly to the Court and possibly file a different witness

15   list that does not include that further identifying

16   information, it just includes the bare, you know, names of the

17   witnesses?  But what we have otherwise endeavored to do is

18   create a list that has their names, their occupation and their

19   hometown for purposes of helping potential jurors, you know,

20   know whether they know these people.  And then one further

21   point on that is, that's one thing that we have not fully

22   received from the defense is the occupations and hometowns of a

23   good number of the witnesses that they had put on their list.

24      THE COURT:  Well, I think I made myself as clear as I

25   could that I wanted that information on there.  And so why is

1   it not included?

2              No one has an answer.

3              MR. ISAACSON:  Well, Your Honor, if I -- if I may, for

4   the witnesses I've had, I've identified them all on Oahu,

5   Honolulu.  I mean that's --

6              THE COURT:  All right.  By 5 o'clock today I want you

7   to e-mail every witness that's yours on that list occupation

8   and, again, whether it be Honolulu, Oahu, just a general

9   location.  Okay?

10              MS. KAGIWADA:  Your Honor.

11              THE COURT:  Yes.

12              MS. KAGIWADA:  I did identify for my witnesses, a lot

13   of them are HPD officers.  I didn't also identify a hometown

14   because if they're HPD officers --

15              THE COURT:  Well, I think, you know, we might as well

16   fill in every category, but they can just put in Honolulu.

17              MS. KAGIWADA:  Okay.

18              THE COURT:  The government can do that because -- and

19   they'll know where that person is from.

20              MS. KAGIWADA:  And some people we don't necessarily

21   know their occupations.

22              THE COURT:  Okay.  If you don't know, leave it blank.

23   But if you know where they're from, put it in.  Okay.  And I

24   think that can be publicly filed.  If they testify, that

25   information is going to be public.

1          So, Mr. McDonald, you can send it to the orders inbox,

2     also file it.  Okay?

3          MR. McDONALD:  We will, Your Honor.

4          THE COURT:  And if you can't get that until Monday

5     morning, that's fine, given it may take you a little longer.

6     So, you know, if you can get it in by Monday at noon, we can

7     still work through that.  All right, Mr. McDonald?

8          MR. MCDONALD:  Okay.  Thank you, Your Honor.

9          THE COURT:  All right.  I think what we have set up is

10    on the 13th, I don't know if Ms. Abernathy has talked to you,

11    but I think she has a place where you folks can park and where

12    you can be with your clients.  We sort of have some space

13    between you and the government to sort of wait.  I told her I

14    don't think you folks want to be sitting there while jurors

15    walk in.  It's just uncomfortable to be in that position.  So

16    we'll keep you sort of backstage, if you will, away.  I'm not

17    sure exactly the setup.  And then once everyone is there you

18    will be brought in, sit down, and then I'll come out after

19    that.  Okay?

20         And I do plan to stay while they're filling out those

21    questionnaires in case something comes up, and I think you

22    folks should as well plan to stay.  Okay?

23         MR. BARBEE:  Is the Court thinking 9 a.m. for us to

24    arrive with our clients and then what would be our expected

25    departure time?

1            THE COURT:  Well, I don't know how long it will take.

2     I mean what did we say when we tested how long it would take?

3     What did I say, about 45 minutes, something like that.  So I

4     think maybe an hour-and-a-half would be -- after they get the

5     questionnaire is my guess.  I really don't think we'll start

6     right at 9 o'clock though, Mr. Barbee, with all of the check-in

7     and -- we're going to have a lot of court personnel there to

8     get people signed in, you know, get the materials, to sort of

9     keep an eye on people, to make sure people are getting seated

10    and so forth, and that everyone is seated then before you folks

11    come out and then when I come out.  So we're going to have a

12    number of people there to make sure it goes as smoothly as

13    possible.

14            MR. BERVAR:  Just to get --

15            THE COURT:  Use the microphone so the government --

16            MR. BERVAR:  Monday is the day for just the jurors to

17    fill out the questionnaires, we're anticipating maybe a

18    half-day?

19            THE COURT:  Yes.  Exactly.  That's fair.

20            MR. BERVAR:  Okay.  And then my schedule or I had

21    written down that Tuesday we had -- there was no trial on

22    Tuesday?

23            THE COURT:  Right.  So if you remember, Mr. Bervar, I

24    spread this out more from when the last trial was scheduled so

25    that people would have more time with the questionnaires.

 1          MR. BERVAR:  Okay.

 2          THE COURT:  So Tuesday is the day where everyone

 3     should be looking through those questionnaires.  You folks

 4     then, the defense and government have to get together though,

 5     right?  This isn't just -- we're not going to get back together

 6     with you saying individually I'm good with juror number two

 7     going; I'm not good with juror number two.  I told you I'm not

 8     going to rule like that because we'll never get through it if

 9     we do that.  So we're going to excuse people that everyone

10     agrees to excuse.  Okay.

11          But I think what the defense should do is get together

12     first.  That's my recommendation is the five of you get

13     together, agree, and you and the government can share a list

14     and see where it matches up or it doesn't match up and you can

15     have discussion to see if you can agree.  Okay?

16          MS. KAGIWADA:  And is the Court anticipating that we

17     would provide the Court with a combined list then at some

18     point?

19          THE COURT:  Yeah, I mean then I think we're going to

20     get back together.  You can do that.  I mean I also have to

21     agree, right?  So I want to look.  But in the first instance,

22     you know, I'll take your lead.  In other words, I'll look at

23     what your agreed upon list is and I'll take a look at that.

24     But I'll look through all the questionnaires as well so I have

25     a sense of what the answers are.  Okay.  Then if I have some

 1    that I think should be excused, I may raise that, I may not.

 2    It just depends on -- and see if everyone else agrees.  Okay?

 3              MR. BARBEE:  Did you want that combined agreed upon

 4    dismissal for cause or proposed dismissal for cause Tuesday

 5    afternoon or Wednesday morning?

 6              THE COURT:  So when does the first group come in,

 7    Cynthia?

 8              THE JURY CLERK:  May 17th, Friday.  May 17th, Friday.

 9              THE COURT:  Right.  So we don't come in until the

10    17th, Mr. Barbee.  So I think what I wanted was by the 15th end

11    of day to have this done.  So, what I suggest is we get

12    together at 1:30 on the 15th.

13              MR. BERVAR:  Aren't we in court all day that day?  I'm

14    sorry.  I thought we were in court all day on the 15th?

15              MR. HIRONAKA:  I don't think we ever said.

16              THE COURT:  You may have just noted that, Mr. Bervar,

17    to keep yourself free.  I think that's the day we were planning

18    to get together to go over this.  I'm saying I think we can

19    start at 1:30.

20              MR. BERVAR:  Okay.

21              THE COURT:  To give yourself more time in the morning.

22    I don't think it will take more than an hour or two once you

23    folks do all your legwork.

24              Does that work for you then, Cynthia?  No?  You don't

25    look happy with that.

1          THE JURY CLERK:  That's fine.  That will give us a

2    day.

3          THE COURT:  Well, it will be a day-and-a-half.  We'll

4    be done, we'll know the first grouping relatively early, like

5    by 2:30 at the latest.  And you'll know that so you can get to

6    work, especially for the neighbor island people that might be

7    on that list, right, Wednesday afternoon and then Thursday.

8          THE JURY CLERK:  That's enough.

9          MR. HIRONAKA:  And, Your Honor, just so I'm clear, the

10   433 that are returning on Monday the 13th, that is going to

11   be -- their numbers are going to be randomly assigned?

12         THE COURT:  They're already randomly assigned.

13         MR. HIRONAKA:  Oh, okay.  So they're not going to be

14   again randomly -- they already have their numbers?  The one

15   through 1500 was already randomly assigned?

16         THE COURT:  Right.  I mean we have assigned them, as I

17   understand it -- Cynthia, tell me if I'm wrong -- the random

18   system we already have, they sort of are assigned in certain

19   order.  Not alphabetical.

20         MR. HIRONAKA:  Right.

21         THE COURT:  Just a random order.  It will keep that

22   order for the one through 425 let's say that we have.  And then

23   we're going to go through that process.  And then once we have

24   the number we need for exercise of peremptories, we're going to

25   randomize again.

1          MR. HIRONAKA:  Oh, we're going to randomize again at

2    that point?

3          THE COURT:  Yes.

4          MR. HIRONAKA:  Okay.  And then that will be

5    essentially the order that they would be brought into the 50 or

6    whatever we need to get our full jury.

7          THE COURT:  Exactly.

8          MR. HIRONAKA:  Okay.  Okay.  So there will be no wheel

9    involved in this process.

10          THE COURT:  Well, there will be a wheel, the old

11   fashioned lottery type wheel, right, where whatever number we

12   have that we're going to bring in to exercise peremptories on,

13   all of those names will go in there and they will be pulled

14   out.  And regardless what number they had before they will be

15   given a new number, one through whatever it is.  So it will be

16   randomized again.  Does everyone understand that?

17          MR. HIRONAKA:  So be double randomized and put into

18   the wheel.

19          THE COURT:  I don't know about double randomized.

20          MR. HIRONAKA:  I mean already randomly assigned one

21   through --

22          THE COURT:  Right.  It's not alphabetical right now.

23          MR. HIRONAKA:  Right.

24          THE COURT:  It's a random assignment.

25          MR. HIRONAKA:  Right.  And then we whittle it down

1    after Wednesday, it'll be reassigned numbers randomly.

2              THE COURT:  No, no, no, no.

3              MR. HIRONAKA:  Oh.

4              THE COURT:  No.  What we'll just do is exclude people.

5    So let's say one through ten.  Right.  Let's say we get rid of

6    one, two and three, everyone else is good.  Then the people

7    that come in the first day, it will be four, five, six, seven,

8    eight, nine, ten, et cetera.  Those numbers won't change.

9              MR. HIRONAKA:  Okay.

10             THE COURT:  Okay.  But once we pick the number out of

11   all of those jurors that we need for the jury plus the

12   peremptories, those people are going to come back, whatever

13   number that is.

14             MR. HIRONAKA:  Right.

15             THE COURT:  The 12 plus six plus ten.  If we end up

16   with a few extra I said I may allow extra peremptories, right?

17             MR. HIRONAKA:  Right.

18             THE COURT:  So whatever that number is.  We'd bring

19   them in, they'll be randomized at that point in time.

20             MR. HIRONAKA:  I see.

21             THE COURT:  Or re-randomized at that point in time.

22             MR. HIRONAKA:  Okay.

23             THE COURT:  Okay?  Everyone understand that?  We sort

24   of covered this before.  I know it's a little confusing.

25             Cynthia, is that correct as far as your understanding?

1          THE JURY CLERK:  Yes.

2          MR. BARBEE:  Judge, just one last thing again.  So you

3    want the combined list that the government and defense agree

4    may be challenged for cause by Tuesday afternoon or Wednesday?

5          THE COURT:  No, I think -- I think if you give it to

6    me Wednesday.

7          MR. BARBEE:  Okay.  Before the 1:30.

8          THE COURT:  Even 10 o'clock.

9          MR. BARBEE:  Wednesday, 10 o'clock.

10         THE COURT:  Yeah, would be good.  And then I have a

11   few hours to get organized at that point in time.

12         MS. KAGIWADA:  And will it be the government or the

13   defense that will be providing you with that combined list?

14         THE COURT:  Mr. McDonald, you can do that?

15         MR. McDONALD:  Yes, we can, Your Honor.

16         THE COURT:  I assume that wasn't really a question,

17   but a request the government had to do it, Ms. Kagiwada.  You

18   provided the witness --

19         MS. KAGIWADA:  I just leave it to the Court's

20   discretion.

21         THE COURT:  Okay.  Is that sort of clear then where we

22   are?  And then Friday the 17th is the first day we're going to

23   bring in 45, right?

24         MS. KAGIWADA:  Right.

25         MR. BARBEE:  Right.

1          THE COURT:  And to be clear, that will be number one

2     through whatever that number is of that first 45.  Right?  It's

3     not going to be one through 45 because we will have excluded

4     some of them.  So it might be one through 60 for instance.  But

5     it'll be 45 individuals.  Right?

6          MR. BERVAR:  That's the first day we'll be in court

7     with all the jurors here.

8          THE COURT:  Correct.

9          MR. BERVAR:  -- voir dire.

10         THE COURT:  Right.  And again, I'm going to do some

11    basic voir dire of the group and then they're going to be taken

12    into the courtroom next door and brought in one at a time for

13    individual voir dire.

14         MR. BERVAR:  Thursday the 16th is nothing then.

15         THE COURT:  Right, because that's the day we need to

16    get them here.

17         MR. BERVAR:  Okay.

18         THE COURT:  Right?  We can't just decide they're here

19    and they show up.  It doesn't work like that.

20         MR. HIRONAKA:  And what period time block -- what

21    amount time blocks are we bringing in 45 people, Your Honor?

22    Is that every two hours or three?

23         MR. BERVAR:  It's going to be all day voir dire.

24         THE COURT:  All day.

25         MR. HIRONAKA:  Oh, that 45 is expected to take all

1    day?

2           THE COURT:  Yes.  Yes.  Because we're doing individual

3    voir dire.

4           MR. HIRONAKA:  I see.

5           THE COURT:  Right?  So remember, I just want to remind

6    everybody now, the system we agreed upon is I'll do individual

7    voir dire.  If there's reasons to let people go, we'll let them

8    go.  We'll end up with however many we have left, they'll go

9    next door.  Before they come in you folks will identify, very

10   quickly you're going to have to do this, move quickly, areas

11   you think I should be covering based on the questionnaire for

12   that particular juror.  Okay.  We're not going to waste time

13   where you're looking through the questionnaire right there.

14   Okay.  You're going to have to highlight it, tab it, whatever,

15   but be ready.

16          And, you know, we'll know it by question number.  You

17   can really just say question number, and point out, you know,

18   what the issue is.  It's probably going to be publicity though,

19   right?  It's going to be their knowledge of the case in most

20   instances.  And then I'll bring them in and talk to them a

21   little bit more and see if they can -- I mean I don't think

22   we're going to get many people who don't know about the case.

23   This isn't going to be about finding jurors who know nothing.

24   It's going to be about finding jurors who can be fair and

25   impartial based on what they do know, seems to me is likely

1    where we end up with.  Okay?

2              Any questions from you, Mr. McDonald?

3              MR. McDONALD:  No, Your Honor.

4              THE COURT:  Any on the defense side, any follow-up?

5    No?

6              MR. HIRONAKA:  Your Honor, I don't know if this is a

7    good time to bring this up, but I did submit a letter to the

8    Court with respect to additional individual voir dire.  So if

9    now is not a good time, that's fine, but I just -- it seems

10   like it might be a good time.

11             THE COURT:  Well, I mean I've read it.  I'm not going

12   to ask a lot of those questions.  I will ask some of those

13   questions.

14             MR. HIRONAKA:  Okay.  The only thing that I had sort

15   of thought of after the fact, Your Honor, is that there's been

16   a lot of news articles including as recently as just the other

17   day with respect to sort of misconduct that's being alleged

18   against HPD officers.  Not that it has anything to do with this

19   case, but the only other thing that popped in my head was

20   whether -- and then when I re-looked at our questionnaire for

21   the jurors to fill out individually, it didn't -- there was

22   generic questions that maybe could address those issues.  They

23   might answer questions related to any preconceived notions they

24   have but --

25             THE COURT:  You're worried about publicity about other

1    police officers as opposed to publicity in this case?

2              MR. HIRONAKA:  Sort of the department in general,

3    yeah.  And I didn't know if that was something we -- if it --

4    you know, it's sort of an area to me that maybe can go either

5    way.  But it was just something that occurred to me because I

6    happened to be reading some recent articles.

7              THE COURT:  Well, I will consider that, but I'm

8    unlikely to ask something specific to that.

9              MR. HIRONAKA:  Okay.

10             THE COURT:  Anything else on that then from anyone

11   else?

12             MS. KAGIWADA:  I don't know if this is a good time,

13   but is there any idea as to what time the juror cards are going

14   to be available?

15             THE COURT:  You're talking above my pay grade.  Sorry.

16             THE JURY CLERK:  Monday, hopefully by noon when I get

17   the final list.

18             THE COURT:  So I think it's not -- that was Cynthia

19   Aranador, jury clerk, said Monday around noon-ish is the goal.

20   Right?  All right.

21             MR. McDONALD:  Your Honor, if I could ask a question

22   on that.  Where will we retrieve those jury cards from on

23   Monday?

24             THE COURT:  From you Cynthia?

25             Yeah, down on the first floor in the jury lounge.

1          MR. McDONALD:  Okay.

2          THE COURT:  She'll call.  Cynthia will call you all.

3          MR. McDONALD:  Okay.  Thanks.

4          MR. HIRONAKA:  Is there also a PDF version?  I mean

5    not 1500 -- or 400 of them but maybe one PDF version?

6          THE COURT:  One PDF version of what?

7          MR. HIRONAKA:  Of the juror cards.

8          THE JURY CLERK:  Actually, no, but --

9          THE COURT:  The answer is "no" then.  No "but."  The

10   answer is no.

11         MR. HIRONAKA:  That's fine.

12         THE COURT:  We're not going to do extra work.

13         MR. HIRONAKA:  I was not asking them to do extra --

14         THE COURT:  They're down staff -- right, right.  I

15   mean they're down on staff down there.  This is a hardship

16   already.

17         MR. HIRONAKA:  Oh, no, I understand.

18         THE COURT:  So I'm not going to have them PDF

19   something they don't otherwise PDF.

20         And I know Ms. Abernathy wants to confirm with each

21   defense counsel where you want to pick up the questionnaires.

22   So make sure you talk to her before you go today, okay, to

23   confirm.  I think she knows from last time, but she wanted to

24   confirm that.

25         I understand each of the defense counsel want one.

1   The government only wants one copy; is that right,

2   Mr. McDonald?

3           MR. McDONALD:  Yes, that's right, Your Honor.

4           THE COURT:  All right.  I'm going to get two.  One for

5   myself and one for a law clerk.  And then we're going to have

6   an extra one because when the jurors come in we're going to

7   hand a copy to the jurors.  So they have a copy of it when

8   they're in here for their individual voir dire.  So that'll be

9   nine copies we'll make altogether.  Okay?  Plus the original

10  the court will keep obviously.  Okay.

11          MR. McDONALD:  Your Honor, my colleagues have

12  straightened me out and we would actually request two copies.

13          THE COURT:  Two.  Okay.  I sort of suspected that

14  might be the case.

15          MR. McDONALD:  Thank you, Your Honor.

16          THE COURT:  All right.  So that's ten total.

17          I wanted to talk, and I'll give you folks a chance to

18  raise anything you have, about the publication of exhibits

19  during trial and to make sure everyone understands they better

20  contact, you know, our IT department.

21          Ms. Kagiwada, I understand you wanted your paralegal

22  to be able to sit sort of over against the wall up here; is

23  that right?

24          MS. KAGIWADA:  Yeah.

25          THE COURT:  Which is fine.  Each side I want to make

 1    clear, you know, if the government is using exhibits on direct

 2    and Mr. Barbee, you know, you're up on cross and you want to

 3    reference that exhibit, all you have to do is ask the

 4    government to put that exhibit up, and vice versa.  Okay.  So

 5    you've got to cooperate with each other on your direct, cross,

 6    redirect, and so forth, okay?  In other words, I don't want to

 7    waste time where you're asking the defense paralegal to pull up

 8    the same document the government has and they just used and

 9    presumably they can pull it up immediately.  Okay?

10            I don't know, you know, on the rest of the defense

11    side, I mean I don't even have a problem if, you know, the

12    government used an exhibit that was introduced earlier and you

13    ask them to pull something up, you know, I don't see that as a

14    huge problem most likely.  But, you know, make sure your

15    equipment works and is compatible with everything we have here,

16    Ms. Kagiwada.  I don't know if you've had those discussions yet

17    with our IT staff.

18            MS. KAGIWADA:  Actually we were here back in April.

19            THE COURT:  Okay.

20            MS. KAGIWADA:  But we never actually spoke to the IT

21    staff yet.

22            THE COURT:  Okay.

23            MS. KAGIWADA:  And I understand from your courtroom

24    manager that we've been told that we need to provide our own

25    cords, extension cords?

1          THE COURT:  That may be.  I'll tell you what, Renee,

2    why don't you hook them up with IT.  I'm not sure who down

3    there would be the person.  And give Ms. Kagiwada a name.

4          And you can call them, Ms. Kagiwada, come over, meet

5    them and see what it is.  Okay.

6          MR. BARBEE:  Yeah, we met with Ms. Honda and she

7    explained quite a bit to us about the monitors and things like

8    that.

9          THE COURT:  All right.  But I think for the pure IT

10   stuff, which she doesn't know, I don't know, you know, you need

11   to sit down with the IT people and make sure this is all going

12   to work.  Again, I don't want to be here, you know, opening and

13   something doesn't work.  So I want to make sure we're all set.

14         And the same with you, Mr. McDonald, okay?

15         MR. McDONALD:  Understood, Your Honor.

16         THE COURT:  And the U.S. Attorney's Office here sort

17   of has it down because they try cases all the time, but, you

18   know, I don't know if the systems you're bringing are different

19   in any way.

20         MR. McDONALD:  We've done a preliminary review of the

21   systems and I think we're in good shape there, but we'll be

22   sure once first day comes we'll be ready.

23         THE COURT:  All right.  I know in your trial brief,

24   Mr. McDonald, you mentioned the using of exhibits during

25   opening.  I don't know if, you know, any of you folks have

 1    thought about using exhibits, but what you need to do is talk

 2    to the other side and see if there's an agreement those

 3    exhibits can be used during opening.

 4         MR. BARBEE:  Judge, Rus Barbee.  I do have a problem.

 5    It seems like the government wants to start its case in chief

 6    in opening and they refer to it as opening argument in their

 7    brief, and it's not an argument, it's a statement.  And

 8    typically the judge will tell the jury this is a roadmap of the

 9    case, et cetera, et cetera.  But to publish actual exhibits in

10    an opening, I've never had that experience in --

11         THE COURT:  Well, I have.  I mean a lot of trials it

12    happens, but it's usually really limited and it's something

13    everyone agrees will come into evidence.

14         MR. BARBEE:  Okay.

15         THE COURT:  Okay?  So you folks can talk about that

16    and see.  But you're right, I mean it's not going to be like,

17    you know, exhibit after exhibit after exhibit.  It shouldn't

18    be.  But if everyone is in agreement, that's fine.  If not,

19    then we can take that up.

20         Are all defense counsel making an opening at the

21    beginning of the case?

22         MS. KAGIWADA:  Yes.

23         MR. BARBEE:  Yes.

24         MR. BERVAR:  Yes.

25         MR. HIRONAKA:  Yes.

```
 1          MR. ISAACSON:  I'm not sure, Judge.

 2          THE COURT:  Not sure yet?  All right.  Okay.

 3          And I read in government's trial brief you folks are

 4     talking about some stipulations, that just hasn't been

 5     finalized yet; is that fair?

 6          MR. McDONALD:  That's correct, Your Honor.  We have

 7     sent around some stipulations.  I think we're close on them,

 8     which would forego the need to call probably between eight and

 9     ten or so custodians.  And I think we are close on that

10     stipulation.

11          MR. BARBEE:  Yeah, and again, Rus Barbee here.  I

12     don't think we're going to have too much of a problem so long

13     as it's mutual and the government agrees that our custodians

14     don't have to come in also.

15          THE COURT:  Well, that's, you know, that old legal

16     principle what's good for the goose is good for the gander.

17     That seems fair, but I don't get involved in that.  I just sort

18     of try to nudge is the best I can do I think towards -- that

19     you have the discussions at least.  It's not up to me whether

20     you stipulate, but I do want you to discuss stipulations.

21          MS. KAGIWADA:  Your Honor, is there a date by which

22     you would like stipulations?

23          THE COURT:  What do you think is reasonable?  I don't

24     want to -- a week-and-a-half?

25          MS. KAGIWADA:  It's a little difficult to tell because
```

1   we're still working on our exhibits.

2           THE COURT:  Okay.

3           MS. KAGIWADA:  But whatever is convenient for the

4   Court.

5           THE COURT:  I mean, look, because we're going to be

6   doing jury selection for a while, if we can say by the 15th,

7   I'm good with that to give you plenty of time.

8           MS. KAGIWADA:  Okay.  Thanks.

9           THE COURT:  Okay?  I mean it's kind of a -- I've

10  always felt it was sort of a phony date because I can set a

11  date, but you can stipulate after that.  I'm not going to say

12  no, don't stipulate to something because you didn't meet that

13  deadline.  So, all right.

14          MR. McDONALD:  Your Honor, just one point here.  And

15  we're certainly happy to discuss with counsel any stipulations

16  that -- we think that that makes sense to discuss that.  Just

17  one note on that though, is that we still have not received

18  reciprocal discovery from any of the defendants other than

19  defendant Hahn.  So we're not exactly sure what those

20  custodians are and maybe Mr. Barbee is referring to future

21  conversations about those custodians and we're very happy to

22  engage in that.  But at this point we're just not sure exactly

23  what that is that they're referring to, but we're happy to have

24  those conversations down the line.

25          THE COURT:  All right.  And of course, everyone -- I

1    mean from my perspective the benefit of a stipulation is to

2    shorten the trial, right, for things that are unnecessary.  So

3    clearly there can be a stipulation as to if the documents are

4    otherwise admissible, right?  Not agreeing to whether it be

5    hearsay, not agreeing to whether or not it should be excluded

6    because it wasn't produced in discovery, whatever the matter

7    may be, that it's the authenticity is established.

8         And if it's a business record, then I suppose, you

9    know, the hearsay would come as well, right?  But any other

10   objections you might have as to relevance or wasn't produced in

11   discovery, whatever you might have as far as other objections

12   can remain.  So just consider that.  Again, it's really not my

13   place to tell you what to do in that regard.

14        All right.  So, Ms. Kagiwada, you had asked that we

15   have this in part to cover some matters that are typically

16   covered by the magistrate judge in a pretrial conference.  I

17   got a list of things that we've covered.  The only things we

18   didn't really cover were stipulations, which we just discussed.

19   Jencks disclosures.  Are there ongoing Jencks disclosures or

20   more Jencks disclosures?  Mr. McDonald, where does that stand?

21        MR. McDONALD:  So, Your Honor, we have produced the

22   vast majority of anything that would qualify as Jencks.  Now,

23   we are conducting even, you know, further interviews of

24   witnesses as we head towards trial.  So, you know, as we

25   generate new material we're putting that out as quickly as

1    possible following, you know, witness prep interviews and that

2    sort of thing.  But otherwise we have endeavored all along to

3    include Jencks statements in the discovery long before trial

4    and even going back to even the first round of discovery from

5    way back in November of 2017.  But we are still, you know,

6    doing witness prep that's just leading up to trial and we do

7    expect to generate more material from that.

8           THE COURT:  Other than ongoing witness prep, which

9    everyone understands if material is not in your possession yet,

10   you can't turn it over.  But other than ongoing witness prep

11   where there may be a memorandum of interview created or

12   something, is there any historical Jencks that hasn't been

13   produced that you know of?

14          MR. McDONALD:  I don't think so, Your Honor.  I

15   think -- I think that we have covered that in prior

16   disclosures.

17          THE COURT:  All right.  And then Brady and Giglio, is

18   there any remaining Brady or Giglio?

19          MR. McDONALD:  No, there's not.  You know, we got a

20   letter from one defense counsel, I believe yesterday perhaps,

21   requesting, you know, whether we had obtained certain

22   information and whether we had deliberately not obtained it and

23   calling that Brady.  And it's just our position that what we

24   did not receive from a witness, you know, could not possibly be

25   turned into a Brady issue.  But otherwise the response to your

1    question is we have turned over anything that qualifies for

2    those categories.

3           THE COURT:  All right.  And if defense disagrees, that

4    can be brought to my attention obviously.

5           MS. KAGIWADA:  Your Honor, I did want to bring up one

6    other point, which is we believe that several of the rounds of

7    discovery we're getting from the government now contain expert

8    witness testimony.  And we would like to file a Motion in

9    Limine on that.  Because we're getting very late notice

10   regarding experts.

11          THE COURT:  Give me an example.

12          MS. KAGIWADA:  Well, for example, they just identified

13   and generated information regarding a computer specialist who

14   is going to testify about Facebook and Facebook accounts and

15   how you can track them to various users.  I don't quite

16   understand it myself.

17          THE COURT:  Okay.

18          MS. KAGIWADA:  But it seems -- and this was just

19   generated April 24th, 2019.

20          THE COURT:  All right.

21          MS. KAGIWADA:  That's one example.  We're getting

22   several of these.

23          THE COURT:  All right.  Mr. McDonald?

24          MR. McDONALD:  Your Honor, in an abundance of caution

25   we have been providing notice of witnesses that extend well

1   beyond any 702 requirements.  The one witness that counsel has

2   just indicated, that is a witness to speak solely to cookie and

3   what cookie means in a Facebook return that counsel has had, I

4   don't have the date in front of me, but they've had that return

5   for over a year certainly and the printout is only probably,

6   you know, 19 pages or so from Facebook.  It says that a user

7   used a cookie to access this computer.  And so the -- the

8   testimony is, you know, what does cookie mean in this context,

9   and it means device.  And that's -- that's all that that

10  testimony is.

11          You know, we don't -- we don't consider it as sort of,

12  you know, even expert opinion, but we in an abundance of

13  caution identified witnesses who, you know, could even arguably

14  be considered experts and we have endeavored to put out

15  resumes, you know, detailed descriptions of what they will

16  testify to.  And so we don't believe that they're covered by

17  702.  And even if they were, that, you know, we've done what we

18  need to do to give them sufficient notice of witnesses whose

19  testimony is very narrow and not scientific really in any way.

20          THE COURT:  All right.  Well, I'm not going to

21  obviously rule on it, but I will permit the Motion in Limine --

22  today is the 3rd -- by the -- can you do it by the 8th,

23  Ms. Kagiwada?

24          MS. KAGIWADA:  Yes.

25          THE COURT:  8th.  And then I'll give the government

1   till the 13th for any reply.  And then sometime during that

2   week when we're not -- maybe on that Thursday we can get

3   together and have a discussion on that.

4          I'd like a joint motion though.  I don't want separate

5   motions from the defense.  So if you folks can get together on

6   that.

7          MS. KAGIWADA:  Understood.

8          THE COURT:  I don't know who this evidence pertains

9   to, right?

10          MS. KAGIWADA:  It's mainly pertaining to my client.

11          THE COURT:  Okay.

12          MS. KAGIWADA:  So I imagine that I'll be taking the

13   lead on --

14          THE COURT:  All right.  But you can talk to others.

15   If they want to include it, you know, I'd prefer to have one

16   motion.  I don't want a lot of different motions.

17          MS. KAGIWADA:  Okay.  Very good.

18          THE COURT:  If we can do it that way.  All right?

19          MR. BERVAR:  Before we leave the Jencks issue, I know

20   the government says they've produced all the Jencks, you know,

21   pretrial prep.  But normally we get an order that the Jencks is

22   to be produced the Friday before trial.  Could we have that

23   order from the Court?  All the Jencks should be --

24          THE COURT:  There is no right to that order and

25   they've said they've produced it.

1          MR. BERVAR:  Okay.  Well --

2          THE COURT:  So no.

3          MR. BERVAR:  Okay.

4          THE COURT:  I mean it's only ordered if the government

5    agrees to it.  And they've said they've already produced it.

6    So makes no sense to order something they say they've already

7    produced.  And I don't have the power to order them to produce

8    it.

9          MR. BERVAR:  Okay.  Very well.

10         THE COURT:  As you well know.  Okay.  All right.

11         MR. BARBEE:  Judge, Rus Barbee again.  Item number six

12   on the pretrial checklist, I have sent an e-mail to the

13   government requesting a physical inspection of the evidence,

14   and I did get a reply.  And I just want to confirm with the

15   government that they're going to schedule with us at a mutually

16   agreeable time to have a chance to inspect physical evidence.

17         MR. McDONALD:  And I'll jump in here.  Yes,

18   Mr. Barbee, as we wrote back in that e-mail, certainly, yes, we

19   will accommodate that the week of May 6th and we'll dial in on

20   the time and figure out a good time to do that with you.

21         MR. BARBEE:  Thank you.

22         THE COURT:  All right.  So anything else you folks

23   want to cover at this point in time?  Can start with

24   Ms. Kagiwada?

25         MS. KAGIWADA:  No, I think that covers everything at

1   this time.

2            THE COURT:  Mr. Barbee?

3            MR. BARBEE:  No, Your Honor.  Thank you.

4            THE COURT:  Mr. Bervar?

5            MR. BERVAR:  We're going to get instructions of where

6   to go specifically at the Blaisdell?

7            THE COURT:  Talk to Ms. Abernathy after I leave the

8   bench.

9            MR. BERVAR:  All right.

10           THE COURT:  She may have left her May Day programs

11  early today to be here on time and she made it, because she was

12  off to her kids' school, but she's here.

13           MR. BERVAR:  Okay.

14           THE COURT:  And, yeah, she can help you as to where to

15  go.

16           MR. BERVAR:  Okay.

17           THE COURT:  Mr. Hironaka?

18           MR. HIRONAKA:  No.  Thank you, Your Honor.

19           THE COURT:  Mr. Isaacson?

20           MR. ISAACSON:  Nothing, Your Honor.

21           THE COURT:  All right.  Mr. McDonald, anything from

22  your end?

23           MR. McDONALD:  Just one thing, Your Honor.  We do have

24  the video deposition from the witness on Tuesday.  And we

25  intend to lodge that with the Court just sort of per normal

1  procedures.  I don't know if the Court had any other specific

2  method in which Your Honor wanted to receive that.  Our intent

3  would be to just lodge a copy of that and the transcript with

4  the Clerk's Office.

5       THE COURT:  I'm not sure you need to do that.  I

6  suppose there is an issue, though, that as things stand now, is

7  the witness going to be able to appear to testify if nothing

8  changes by way of health?

9       MR. McDONALD:  So if nothing -- if nothing changes

10  then our hope is that she is and she'll be able to testify.

11  She is hoping to receive a proceed -- a necessary medical

12  procedure related to her heart.  I think we had talked about

13  that before.  And that is something that she hopes to get

14  quickly.  I don't know the exact timeline for that.  So, but we

15  do -- we do hope that she is able to testify, but it's not

16  clear given her pending procedure.

17       THE COURT:  All right.  Because I mean if she can't,

18  then obviously objections are going to have to be filed by both

19  sides, right, as to where they made objections during the

20  course of the deposition that I would rule on and then you'd

21  need time for the videographer to do the splicing and so forth.

22  But I don't think it makes sense for us to do that work right

23  now given we sort of don't know that she won't be able to

24  testify.

25       If -- if things turn for the worse somehow,

 1   Mr. McDonald, you should give notice and then I might, you

 2   know, require you folks to provide -- to provide your

 3   objections.  Okay?

 4        MR. McDONALD:  Yes, Your Honor.  We will certainly

 5   keep close tabs on that situation and give an update at the

 6   first possible opportunity on that.  So we'll be endeavoring to

 7   do that.

 8        THE COURT:  All right.  Okay.  Because that does take

 9   some time.  We do that in civil cases.  It's not a quick

10   process necessarily to get through those objections and then

11   for whoever does the splicing, to get all that done.

12        MR. ISAACSON:  Your Honor, I did have one more

13   question.  I think that in this case I anticipate the

14   government providing video or audio testimony of certain

15   portions of my client's testimony before the grand jury and

16   possibly the Ethics Commission.  We may have disagreement on

17   how much should be put in and not.  How would you like us to

18   address those issues to you?

19        THE COURT:  You know, I mean there could have been a

20   motion in limine, there wasn't, I suppose, but I understand

21   that's really hard to do by way of Motion in Limine.  But, I

22   mean, do you know how much they're planning to put in at this

23   point in time?

24        MR. ISAACSON:  I think we're going to have more

25   discussions.

 1          THE COURT:  Well, have more discussions and then we

 2  can talk later.

 3          MR. ISAACSON:  Very well, Your Honor.

 4          THE COURT:  We'll get back together before then.

 5          MR. ISAACSON:  Yes, Your Honor.

 6          THE COURT:  Okay.  But I'd prefer you sort of try to

 7  nail that down as to where you stand.  So they say they want

 8  this, and you want something more, tell them that and see what

 9  they say and try to reach an agreement before you come back to

10  me.

11          MR. ISAACSON:  Yes, Your Honor.

12          THE COURT:  Okay?  But if you still can't, obviously

13  wee need to work through that.

14          MR. ISAACSON:  Yes, Your Honor.

15          THE COURT:  Because the audio will be played.  Right?

16  And it needs to be --

17          MR. ISAACSON:  I anticipate that, Judge.

18          THE COURT:  I need to rule so that they can get the

19  audio in order the right way.

20          MR. ISAACSON:  Yes, Your Honor.

21          THE COURT:  Right?  Okay.  All right.  And so to be

22  clear on the four days we're going to be meeting with the 45

23  jurors each day, you know, once we reach a threshold of we have

24  enough, we're going to stop, right?  We're not going to go for

25  the sake of to keep going.  Right?  And that would be at a

1    minimum the 12 plus the four alternates plus ten defense

2    peremptories, six government peremptories, two peremptories for

3    alternates on each side, right?  So whatever that adds up to.

4    That would be the minimum.

5         If we get more than that, then we can talk about

6    adding peremptories.  Okay.  So, you know, I don't have a

7    problem with that if we can go a couple extra hours and get

8    some more people, that's fine.  I'm happy to do that because I

9    know that's what you folks want is a few more peremptories.

10   Okay?

11        MR. McDONALD:  Your Honor, in terms of the timing, in

12   the event that we end early, let's say that we have enough

13   jurors on, you know, Monday the 20th, let's say.  Under those

14   circumstances will the plan be to start opening statements the

15   beginning of the next business day?  Like, what -- you know, if

16   we have enough jurors on Monday, then we'll start first thing

17   Tuesday morning, or if we get enough jurors Tuesday, we'll

18   start first thing Wednesday morning.  Will that be the plan?

19        THE COURT:  Well, I think we may have told jurors we

20   wouldn't be in session the 21st and 22nd; is that right?  We

21   didn't tell them that on that cover sheet about the ability to

22   serve?

23        CHIEF DEPUTY ABERNATHY:  That was one of the days that

24   we were going to call in the 45.  So they had to have been

25   available on those days.

1          THE COURT:  Oh, that's right.  So the 17th, 20, 21,

2     22.  I see.  Yeah, right.  Right.

3          I mean I would prefer to keep moving and to move

4     forward if we can.  So if we are done a day early, I'd prefer

5     to move up a day earlier.

6          MR. McDONALD:  Yeah, that's our preference as well,

7     Your Honor.

8                    (Pause in the proceedings.)

9          THE COURT:  Mr. McDonald, the defense is huddling.  So

10    I'm going to let them huddle for a minute.

11         MR. McDONALD:  Understood.  Thank you, Your Honor.

12                   (Pause in the proceedings.)

13         MR. HIRONAKA:  Your Honor, I'm sorry, the only thing I

14    was sort of -- we were conferring on is, if we did finish let's

15    say early on Monday and we hit a certain number --

16         THE COURT:  I really don't think that will happen, but

17    okay, let's --

18         MR. HIRONAKA:  In theory.

19         THE COURT:  -- let's be really optimistic.

20         MR. HIRONAKA:  The only thing that I was saying is

21    that, you know, because, you know, the defense is not

22    necessarily -- everything is, you know, all -- well, I think

23    what I'm saying is we would want at least overnight to confer

24    before we start exercising peremptory challenges.  But I don't

25    think the process of peremptory challenges --

1          THE COURT:  We have to because we wouldn't have all

2     the people from the day before there.

3          MR. HIRONAKA:  Oh, that's right.  Yeah.

4          THE COURT:  Right?  We'd have no choice.  I mean we've

5     got to bring the people back sometime in the morning to

6     exercise peremptories.

7          MR. HIRONAKA:  But was our plan to do sort of after

8     the peremptory challenges, which probably wouldn't take more

9     than an hour --

10          THE COURT:  Right.  Right.

11          MR. HIRONAKA:  To then move straight into opening

12     statements?

13          THE COURT:  Correct.

14          MR. HIRONAKA:  Okay.

15          THE COURT:  Right.

16          MR. HIRONAKA:  All right.  That's fine.

17          THE COURT:  Right.  But you all made it clear to me

18     you wanted those jurors here to exercise your peremptories.

19     You wanted to be able to see them.  And I don't have a problem

20     with that.  So that's why we said we're going to have to bring

21     them back altogether.  So there's no way to exercise the

22     peremptories one day at a time or at the end of any particular

23     day.

24          MR. HIRONAKA:  That's true.  Yeah.  Thank you.

25          THE COURT:  Okay.  I know this can get confusing, but

1   that's -- that's how that will work.  Okay?

2            Mr. Weinberg will be here?

3            MR. BARBEE:  No, he comes back -- he's on a trip with

4   his family.  He comes back Tuesday.

5            THE COURT:  No, no, I mean on -- during those days,

6   the four days.

7            MR. BARBEE:  Oh, yeah.

8            MS. KAGIWADA:  He will definitely be here for all of

9   voir dire.

10           MR. BARBEE:  Yes, Your Honor.

11           THE COURT:  Okay.  All right.  Well, I'm sure there's

12   more we'll have to talk about, but for today that does cover a

13   good amount.  Okay.  Thank you all.

14           (The proceedings concluded at 3:05 p.m., May 3, 2019.)

15

16

17

18

19

20

21

22

23

24

25

43

1               COURT REPORTER'S CERTIFICATE

2

3         I, CYNTHIA FAZIO, Official Court Reporter, United

4   States District Court, District of Hawaii, do hereby certify

5   that pursuant to 28 U.S.C. §753 the foregoing pages is a

6   complete, true, and correct transcript of the stenographically

7   reported proceedings held in the above-entitled matter and that

8   the transcript page format is in conformance with the

9   regulations of the Judicial Conference of the United States.

10        DATED at Honolulu, Hawaii, January 26, 2021.

11

12

13                  /s/ Cynthia Fazio
                    CYNTHIA FAZIO, RMR, CRR, CRC
14

15

16

17

18

19

20

21

22

23

24

25